## UNITED STATES $v$. WADDELL & Others.

ON CERTIFICATE OF DIVISION FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

Submitted October 14, 1884.—Decided November 3, 1884.

§ 5508 Rev. Stat. is a constitutional and valid law. *Ex parte Yarbrough*, 110 U. S. 651, affirmed.

The exercise by a citizen of the United States of the right to make a homestead entry upon unoccupied public lands which is conferred by § 2289 Rev. Stat. is the exercise of a right secured by the Constitution and laws of the United States within the meaning of § 5508 Rev. Stat.

An information which charges in substance that a citizen of the United States, made, on a given day at a land office of the United States a homestead entry on a quarter section of land subject to entry at that place, and that afterwards, while residing on that land for the purpose of perfecting his right to the same under specified laws of the United States on that subject, the defendants conspired to injure and oppress him and to intimidate and threaten him in the free exercise and enjoyment of that right, and because of his having exercised it, and to prevent his compliance with those laws ; and in the second count that, in pursuance of the conspiracy they did upon said homestead tract, with force and arms, fire off loaded guns and pistols in his cabin, and did then and there drive him from his home on said homestead entry ; and in the third count that the defendants went in disguise on the premises when occupied by him, with intent to prevent and hinder the free exercise of and enjoyment by him of the right and privilege to make said homestead entry on lands of the United States secured to him by the Constitution and laws of the United States, and the right to cultivate and improve said lands and mature his title as provided by the statute, states the facts with precision so as to bring the case within § 5508 Rev. Stat.

The certificate of division contained two questions which this court decided, and a third whether the demurrer below was well taken. No ground of demurrer was assigned which raised any question except the two decided, but the record disclosed a grave constitutional question which was not argued or suggested by counsel. *Held*, That the case should be remanded, with answers to the two questions, and for further proceedings.

Information charging a conspiracy to violate a law of the United States. The proceedings, and the facts which make the case, are fully stated in the opinion of the court.

*Mr. Solicitor-General* for plaintiff in error.

*Mr. Joseph W. Martin* for defendants in error.

Mr. Justice Miller delivered the opinion of the court.

This case arises on a criminal information filed by the District Attorney of the United States for the Eastern District of Arkansas in the Circuit Court for that District.

The defendants demurred to the information, and, on consideration of the demurrer, the judges of that court were divided in opinion on three questions, which they have certified to this court, as follows:

" 1. Whether § 5508 of the Revised Statutes is a constitutional and valid law.

" 2. Whether the information in said cause charged any offence under said § 5508 of the Revised Statutes of the United States or against any statute of the United States.

" 3. Whether the demurrer to said information was well taken and should be sustained."

The first and second counts of the information undertake to set out a conspiracy of the defendants, under § 5508, to deprive or hinder Burrell Lindsey, a citizen of the United States, of the right to establish his claim to certain lands of the United States under the homestead acts, namely, §§ 2289, 2290, and 2291 of the Revised Statutes.

And the third count, without charging a conspiracy, states that defendants went upon the land of the United States, occupied by said Lindsey as a homestead, with intent to prevent and hinder him from residing upon and improving said land and maturing the title to himself to said homestead entry, a right secured to him by the sections of the Revised Statutes aforesaid.

The first question certified to us, as to the constitutional validity of § 5508 of the Revised Statutes, was answered in the affirmative by the unanimous opinion of this court in *Yarbrough's Case*, 110 U. S. 651. It is not deemed necessary or appropriate to add to what was there so recently said on that subject. The first question must therefore be answered affirmatively.

Does the information charge any offence under that section? The section reads thus:

" If two or more persons conspire to injure or oppress,

threaten or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or if two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured, they shall be fined not more than five thousand dollars and imprisoned not more than ten years; and shall, moreover, be thereafter ineligible to any office, or place of honor, profit, or trust created by the Constitution or laws of the United States."

The substance of the first two counts of the information is, that Burrell Lindsey, a citizen of the United States, made, on the 30th day of December, 1882, at the United States land office at Little Rock, a homestead entry on a quarter-section of land subject to entry at that place. That afterwards, to wit, on the 10th day of January, 1883, while residing on and cultivating said land for the purpose of perfecting his right to the same, under the laws of the United States on that subject, namely, §§ 2289, 2290, and 2291 of the Revised Statutes, the defendant conspired to injure and oppress him, and to intimidate and threaten him in the free exercise and enjoyment of that right and because of his having exercised it, and to prevent his compliance with those laws; and in the second count, that, in pursuance of this conspiracy, they did, upon said homestead tract, with force and arms, fire off loaded guns and pistols in the cabin of said Lindsey, and did then and there drive him from his home on said homestead entry.

The third count charges that the defendants went in disguise on said premises, while occupied by said Lindsey, with intent to prevent and hinder the free exercise of and enjoyment by him of the right and privilege to make said homestead entry on lands of the United States secured to him by the Constitution and laws of the United States, and the right to cultivate and improve said land and to mature his title, as provided by the statute already referred to.

It seems clear enough that the allegation of a conspiracy to prevent Lindsey from exercising the right to make effectual

his homestead entry, and the acts done in pursuance of that conspiracy, and the going in disguise to his house for the same purpose, are stated with reasonable precision so as to bring the case within section 5508, if the right which he was exercising was one within the meaning of that section and within the constitutional power of Congress to protect by this legislation. In reference to this latter qualification, the statute itself is careful to limit its operation to an obstruction or oppression in " the free exercise of a right or privilege secured by the Constitution or laws of the United States, or because of his having exercised such rights."

The protection of this section extends to no other right, to no right or privilege dependent on a law or laws of the State. Its object is to guarantee safety and protection to persons in the exercise of rights dependent on the laws of the United States, including, of course, the Constitution and treaties as well as statutes, and it does not, in this section at least, design to protect any other rights.

The right assailed, obstructed, and its exercise prevented or intended to be prevented, as set out in this petition, is very clearly a right wholly dependent upon the act of Congress concerning the settlement and sale of the public lands of the United States. No such right exists or can exist outside of an act of Congress. The Constitution of the United States, by Article IV., section 3, in express terms vests in Congress " the power to dispose of and make all needful rules and regulations respecting the territory or other property of the United States." One of its regulations—the one under consideration—authorizes a class of persons, of whom Lindsey is one, to settle upon its land, and, on payment of an inconsiderable sum of money and the written declaration of intent to make it a homestead, he is authorized to reside there. By building a house and making other improvements on it and residing there for five years consecutively, which, under the statute and under that alone, he has a right to do, and paying the fees to the officer necessary to its issue, he acquires a patent or title in fee to the land.

But his title is dependent on continued residence of himself

or family.  By the original entry he acquires the inchoate but well-defined right to the land and its possession, which can only be perfected by continued residence, possession, and cultivation for five years.  His right to continue this residence for five years for that purpose, is dependent upon the act of Congress.  His right to the patent, after this is done, rests exclusively on the same foundation.

The right here guaranteed is not the mere right of protection against personal violence.  This, if the result of an ordinary quarrel or malice, would be cognizable under the laws of the State and by its courts.  But it is something different from that.  It is the right to remain on the land in order to perform the requirements of the act of Congress, and, according to its rules, perfect his incipient title.

Whenever the acts complained of are of a character to prevent this, or throw obstruction in the way of exercising this right, and for the purpose and with intent to prevent it, or to injure or oppress a person because he has exercised it, then, because it is a right asserted under the law of the United States and granted by that law, those acts come within the purview of the statute and of the constitutional power of Congress to make such statute.  In the language of the court in *Ex parte Yarbrough:* "The power arises out of the circumstance that the function in which the party is engaged, or the right which he is about to exercise, is dependent on the laws of the United States.  In both of these cases it is the duty of that government to see that he may exercise this right freely, and to protect him from violence while so doing, or on account of so doing."

This language is as applicable to the present case as it is to that.

It would indeed be strange if the United States, under the constitutional provisions we have cited, being the owner of unsettled lands larger in area than the most powerful kingdoms of Europe, and having the power "to dispose of and make all needful rules and regulations respecting this territory," cannot make a law which protects a party in the performance of his existing contract for the purchase of such land, without which

the contract fails, and the rights, both of the United States and the purchaser, are defeated.

This view requires the second question also to be answered affirmatively.

With regard to the third question, we have some difficulty in deciding what precise point of law the judges of the Circuit Court differed upon, and what they referred to us for decision.

Did they mean to ask, is there any reason whatever why this information shall be held bad? Or did they mean to inquire whether it was bad for either of the two other matters we have discussed? Or did they refer it to this court to decide whether it was bad for any of the reasons found in the demurrer to it filed in the case?

It has been repeatedly held in this court that the object of the statute authorizing such certificates is to present some one or more well-defined, clear-cut questions of law which arise in the progress of the case in the Circuit Court, and on which the opinions of the judges holding it or them are opposed. The first two questions suggest, in each of them, such a point very clearly. The third does not. It leaves us to wander over the whole field of conjecture for any possible objection to the information, without pointing to any distinct proposition of law on which the judges divided. *De Wolf* v. *Usher*, 3 Pet. 269; *Sadler* v. *Hoover*, 7 How. 646; *Wilson* v. *Barnum*, 8 How. 258; *Daniels* v. *Railroad Co.*, 3 Wall. 250; *Havemeyer* v. *Iowa County*, 3 Wall. 294; *Ward* v. *Chamberlain*, 2 Black, 430.

If we look beyond the certificate of the judges to the demurrer itself, we find no ground of demurrer assigned which raises any other question than the two we have discussed. The demurrer is in the following language:

"*United States*
v.                    } No. 959.
*David Waddell* et als. }

" Come the defendants, by their attorney, and demur to the information herein filed against them, and for cause thereof say:

" 1st. The matters and things alleged therein do not consti-

tute any offence against the laws or sovereignty of the United States.

"2d. Said information does not allege any offence of which this court has jurisdiction.

"3d. Because said section 5508, so far as it may attempt to impose penalties and inflict punishment for the lawlessness and violence set forth in said information, is in violation of the Constitution of the United States and void.

"4th. And because said information is in other respects informal, is insufficient and defective.

"Wherefore said defendants pray judgment of said information, and that the same may be quashed, &c.

"JOSEPH W. MARTIN, *Att'y for def'ts.*"

Nor has the counsel for the United States, or for the defendants, suggested in their briefs or otherwise any other question or proposition of law besides the two we have already decided.

The pertinency of these remarks will be seen when we observe that § 5508, after defining the punishment of those convicted under it, by fine and imprisonment, adds : "And (they) shall, moreover, be thereafter ineligible to any office, or place of honor, profit or trust created by the Constitution or laws of the United States." When we bring this language, which is not the sentence of the court, but an indelible disgrace affixed to the party convicted, by the declaration of the law itself, into direct connection with the language of the fifth article of amendment of the Constitution, namely, that "no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury," there does arise a very serious question whether *this* crime is not made an infamous one by the language of the statute, and cannot, therefore, be prosecuted by information.

The question is a very important one. It has not been argued before us or even suggested by counsel. We see no reason to believe that it was in the minds of the judges, nor any evidence that they would have been opposed in opinion on it if it had been suggested to them.

Under these circumstances we think it the true course to re-mit the case to the Circuit Court with the answers to the two other questions, that the question whether the case can be prosecuted by information may be there raised in an appropriate manner; and for such action, as to counsel and the court may appear best.

The first and second questions are answered affirmatively, and the case

*Remanded to the Circuit Court for further proceedings.*